UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBBIE M., *on behalf of C.N.M.B*,

        Plaintiff,

     v.                                            **DECISION AND ORDER**
                                                            20-CV-614S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.      Plaintiff Debbie M.[1] challenges an Administrative Law Judge's ("ALJ") determination that her minor child, C.N.M.B., is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that C.N.M.B. has been disabled since May 15, 2016, due to attention deficit hyperactivity disorder ("ADHD"), affective disorders, and disruptive mood dysregulation, and is therefore entitled to payment of Supplemental Security Income benefits ("SSI") under the Act.

        2.      Plaintiff applied for SSI benefits on C.N.M.B.'s behalf on May 15, 2017.  After denial at the agency level, Plaintiff proceeded to a hearing, which took place before ALJ William M. Manico on March 1, 2019.  The ALJ considered the case *de novo* and, on April 4, 2019, issued a written decision denying Plaintiff's application.  The Appeals Council thereafter denied Plaintiff's request for review on March 25, 2020.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

3.	Plaintiff timely filed the current civil action on C.N.M.B.'s behalf on May 26, 2020, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on July 22, 2021. (Docket Nos. 9, 12, 15, 16.) The Clerk of Court thereafter assigned the case here on October 6, 2021, at which time this Court took the motions under advisement without oral argument. (Docket No. 17.) For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4.	A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 1383 (c)(3).

5.	A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the

---

[2] The ALJ's April 4, 2019 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6. As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere

3

scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. § 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.  See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).  This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805

4

F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'"  Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9.     On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity and Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard applicable to minors seeking SSI benefits.  See 42 U.S.C. § 1382c.  In relevant part, the 1996 Act provides that an "individual under the age of 18 shall be considered disabled . . . if [he or she] has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c (a)(3)(C)(i).

10.    Regulations promulgated by the Social Security Administration define "marked and severe functional limitations" in terms of "listing-level severity," i.e., an impairment that meets, medically equals, or functionally equals the severity of an impairment in the listings.  20 C.F.R. § 416.926a (a).  Under the regulations, functional limitations are evaluated in six broad areas or domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being.  See 20 C.F.R. § 416.926a (b)(1).

11. The Commissioner has established a three-step sequential evaluation process to determine whether a minor is disabled under the Act. See 20 C.F.R. § 416.924. The minor must demonstrate that (1) he or she is not engaged in substantial gainful activity (i.e., he or she is not working); (2) he or she has a "severe" impairment or combination of impairments; and (3) his or her impairment or combination of impairments is of a listing-level severity, in that it meets, medically equals, or functionally equals the severity of a listed impairment. See id. A minor's medically-determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in a single domain. See 20 C.F.R. § 416.926a. A limitation is "marked" if it *seriously* interferes with a claimant's ability to independently initiate, sustain, or complete activities. See 20 C.F.R. § 416.926a (e)(2) (emphasis added). A limitation is "extreme" if it *very seriously* interferes with those same abilities. See 20 C.F.R. § 416.926a (e)(3) (emphasis added).

12. Applying the sequential evaluation in the instant case, the ALJ made the following findings: (1) C.N.M.B. had not engaged in substantial gainful activity since May 15, 2017, the date the application was filed (R. at 18);[3] (2) C.N.M.B. had ADHD, affective disorder, and disruptive mood dysregulation, which constituted severe impairments under the Act (R. at 18-19); and (3) C.N.M.B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments (R. at 19). In addition, the ALJ evaluated C.N.M.B.'s mental impairments to determine if they were "functionally equivalent" to a listed impairment and concluded that they were

---

[3] Citations to the underlying administrative record are designated as "R."

not.  (R. at 19-33.)  Based on the record, the ALJ ultimately determined that C.N.M.B. was not under a disability, as defined by the Act, since May 15, 2017, through the date of the decision.  (R. at 16, 33.)

13.    Plaintiff raises a single argument in support of remand: that the ALJ's consideration of Charline Davis's opinion was "deeply flawed."  Although referenced as "C.N.M.B.'s home health worker" in Plaintiff's brief, see Memorandum of Law, Docket No. 12-1, pp. 1, 7, the hearing testimony reveals that Davis is a social worker whose primary role was to assist C.N.M.B.'s mother in managing C.N.M.B.'s care.  (R. at 48-51.)  At the hearing, C.N.M.B.'s mother explained the nature and origin of Davis's relationship with the family as follows:

> To help me out with - - because I had so much on my plate with my health conditions and everything that I was going through with me, and being a single parent, and trying to cope with a child that had ADHD, and, you know, with - - also, with my mental health issues, you know, and, you know, trying to deal with [C.N.M.B.'s].  You know, having somebody there that understands it, to explain to me and to also, be there to support [C.N.M.B.], you know.  And that's what [Davis] is there for.  That she's there to support [C.N.M.B.] in, you know, ways that I can and cannot.  She's there, where she can call the transportation and set up - - she goes - - she can go to [C.N.M.B.'s] appointments.

(R. at 64-65.)

14.    Davis visited C.N.M.B.'s home monthly for 15 minutes at a time, spoke to C.N.M.B. for 10 minutes, and discussed with C.N.M.B.'s mother whether any assistance or intervention was needed.  (R. at 48-51.)  At the hearing, C.N.M.B.'s mother further described Davis's typical monthly interactions with the family as follows:

> We sit down. She asks how [C.N.M.B.] is doing.  She takes notes.  She asks if I need anything for [C.N.M.B.].  If there's any new problems that have been set.  If [C.N.M.B.] has any

> doctor's appointments coming up, does [C.N.M.B.] need transportation for and she'll set the transportation up for [C.N.M.B.]. If [C.N.M.B.] has any counseling appointments coming up with Monsignor Carr and she'll be there or if I have any paperwork I have to fill out for [C.N.M.B.] that I - - you know, she'll bring that for me to fill out if [C.N.M.B.] has paperwork [C.N.M.B.] has to sign from her. [C.N.M.B.] has to sign it. But she'll talk to [C.N.M.B.] and see how [C.N.M.B.] is doing, as well.

(R. at 50-51.)

15. In February 2019, Davis completed a "Mental Residual Functional Capacity Questionnaire." (R. at 462-66.) Davis noted therein that she sees C.N.M.B. once per month for one or two hours, which is inconsistent with C.N.M.B.'s mother's testimony. (R. at 48-51, 462.) The questionnaire is largely blank, with no diagnoses, no descriptions of treatment, no list of prescribed medications, no clinical findings, no prognosis, etc. (R. at 462-66.) While Davis identifies some of C.N.M.B.'s "signs and symptoms" in a check-box format, she narratively states that "[C.N.M.B.] can function as a 'normal child' but let[s] emotion take control." (R. at 464.) Davis then identifies C.N.M.B. as having no limitation in moving about and manipulating objects; a moderate limitation in acquiring and using information; and marked limitations in attending and completing tasks, interacting and relating with others, and caring for self. (R. at 464-65.) Davis completes the questionnaire by stating narratively that "C.N.M.B. sometimes shows examples of opposition when [C.N.M.B.] doesn't get [C.N.M.B.'s] way[.] [S]he will cry and fall out in tantrums. Care manager only witnessed this behavior once in the beginning of working with the family." (R. at 465.)

16. At the hearing, C.N.M.B.'s mother testified about Davis's completion of this questionnaire. (R. at 51-52.) She stated that she gave the questionnaire to Davis to

8

complete, at which time Davis asked her how to fill it out. (R. at 51-52.) C.N.M.B.'s mother told Davis that she did not know how to fill out the questionnaire, but that Davis should do so to the best of her ability. (R. at 52.) Davis subsequently spoke to C.N.M.B.'s mother over the telephone for 15 or 20 minutes about the questionnaire, but Davis did not ask C.N.M.B.'s mother any questions about C.N.M.B. in connection with completing the questionnaire. (R. at 52.)

17. The ALJ considered Davis's questionnaire and found it to be unpersuasive for several reasons. (R. at 25.) First, the ALJ noted that C.N.M.B.'s treatment records do not support Davis's finding of marked limitations in three areas. Id. Second, he noted that Davis herself witnessed oppositional behavior from C.N.M.B. on only a single occasion and described C.N.M.B. as only "sometimes" engaging in such behavior, which is again inconsistent with Davis's findings of marked limitations. Id. Third, noting C.N.M.B.'s mother's testimony, the ALJ found that Davis's opinion was further limited by the amount and quality of the time she spent with C.N.M.B. (R. at 25-26) (observing that "Davis is the claimant's case manager, who comes to the house once or twice a month to check on things, arrange transportation for child, makes sure that forms are filled out, and asks child how things are going.") Finally, the ALJ discounted Davis's opinion because she was not a "therapist/counselor or medical provider." (R. at 26.)

18. Plaintiff argues that the ALJ's consideration of Davis's opinion is "deeply flawed" and requires remand because the ALJ failed to articulate valid reasons for rejecting Davis's opinion, which renders his ultimate determination unsupported by substantial evidence. In response, the Commissioner argues that the ALJ's decision is

supported by substantial evidence and free from legal error and should therefore be affirmed. This Court agrees with the Commissioner.

19. Plaintiff first contends that the ALJ's consideration of Davis's opinion is faulty because he referenced non-existent "treatment records" from Davis. (R. at 25.) The ALJ wrote: "I note that were the claimant as restricted as Ms. Davis claims, one would expect to see some support for her ultimate determination within her treating records." Id. Given the ALJ's knowledge that the record contained little documentation from Davis, see R. at 41-48 (discussing missing records), it appears that the second "her" in the quoted sentence refers to C.N.M.B., not Davis. The ALJ therefore did not rely on non-existent records, as Plaintiff suggests.

20. Plaintiff next argues that the ALJ erred by considering that C.N.M.B. only "sometimes" exhibited oppositional behavior and did so only once in Davis's presence. (R. at 25.) Contrary to Plaintiff's argument, however, the ALJ did not rely solely on the infrequent nature of the oppositional behavior to find that C.N.M.B. had less than marked limitations in any one domain, but rather, noted the infrequency in his consideration of all of the evidence concerning the severity of C.N.M.B.'s condition. This Court therefore finds no merit in Plaintiff's contention that the ALJ erred.

21. Plaintiff next suggests that the ALJ failed to consider the various interventions that C.N.M.B. received, including medications, counseling, and Davis's at-home coordination. While the ALJ may not have weighed this evidence in Plaintiff's favor, it is clear from the ALJ's thorough decision that he did in fact consider and weigh this evidence, contrary to Plaintiff's arguments otherwise.

22.     Finally, Plaintiff argues that the ALJ erred in rejecting Davis's opinions because Davis was the best source to speak to C.N.M.B.'s issues in the home.  Plaintiff also takes issue with the ALJ discounting Davis's opinion based on the quality and quantity of the time Davis spent with C.N.M.B.  But as set forth above, the record contains evidence supporting the ALJ's reasoning in this regard, most notably the conflicting evidence concerning how much time Davis spent in the home, her role as more of a coordinator to assist C.N.M.B.'s mother than to treat C.N.M.B., and the largely incomplete and unsupported questionnaire Davis completed.  It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with the record as a whole.  See, e.g., Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the [Social Security Administration], and not this court, to weigh the conflicting evidence in the record.").  Here, the ALJ weighed the competing evidence and sufficiently explained his reasoning.  This Court therefore detects no error.

23.     Collectively, Plaintiff's arguments essentially seek a re-weighing of Davis's opinion, which is not permitted.  See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) (noting that the deferential standard of review prohibits a re-weighing of the evidence); see also Richardson, 402 U.S. at 399 (finding that it is the ALJ's task to weigh and resolve conflicting evidence in the record).  While Plaintiff undoubtedly would have preferred a weighing of the evidence in her favor, the ALJ adequately explained his consideration of Davis's opinion, and his conclusions in this regard are supported by substantial evidence in the record.  See Bonet ex rel. T.B., 523 F. App'x at 59 (noting that the issue on review is whether substantial evidence supports the ALJ's decision, not whether it supports Plaintiff's position).

24.	Accordingly, having reviewed the ALJ's decision in light of Plaintiff's argument, this Court finds that it is free from legal error and supported by substantial evidence. It is therefore affirmed. See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:	November 8, 2021
	Buffalo, New York

					s/William M. Skretny
					WILLIAM M. SKRETNY
					United States District Judge